1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

ASHLEY SCHWARTZ-EARP,

Plaintiff,

8

v.

9

ADVANCED CALL CENTER
TECHNOLOGIES, LLC,

10

Defendant.

11

Case No.  15-cv-01582-MEJ

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 29, 30

12

13

**INTRODUCTION**

14

Plaintiff Ashley Schwartz-Earp ("Plaintiff") brings this case against Defendant Advanced

15

Call Center Technologies, LLC ("Defendant") for claims based on Defendant's efforts to collect

16

on a consumer debt.  Pending before the Court is Defendant's Motion for Summary Judgment.

17

Dkt. No. 30.  The Court finds this motion suitable for disposition without oral argument and

18

**VACATES** the March 17, 2016 hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having

19

considered the parties' positions, relevant legal authority, and the record in this case, the Court

20

**GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for the following reasons.

21

**BACKGROUND**

22

On or about February 3, 2014, Plaintiff applied in-store for a JCPenney-branded credit

23

card, issued by Synchrony Financial ("Synchrony").  Lambie Decl., Ex. 1 (Pl. Dep.) 16:12-24,

24

23:23-24, Dkt. No. 33-1.  As part of the application process, the cashier asked Plaintiff for her

25

telephone number, and Plaintiff provided her number.  *Id.* 36:24-37:25.  Plaintiff did not indicate it

26

was for a cell phone.  *Id.* 41:25-42:11.  Plaintiff's application was immediately approved, and she

27

received a temporary bar code, which she used to make purchases.  *Id.* 42:12-24.  Eventually,

28

Plaintiff received a permanent credit card in the mail, which she used to make additional

purchases.  *Id.* 42:25-43:1, 45:8-10.

Plaintiff made payments on her credit card account until late 2014, when she claims online access to her account was disabled.  *Id.* 52:5-18.  At the time Plaintiff stopped making payments on her credit card account, she had an outstanding balance of approximately $350.  *Id.* 59:11-17.

Defendant engages in the collection of debts on behalf of creditors, including Synchrony. Keller Decl. ¶ 1, Dkt. No. 32.  Synchrony placed Plaintiff's credit card account with Defendant for collections on January 17, 2015.  *Id.* ¶ 12.  Between January 17, 2015 and February 22, 2015, Defendant placed at least 134 calls to Plaintiff at the number she provided.  *Id.*, Ex. 3 (Call Log); Schwartz-Earp Decl. ¶ 4, Dkt. No. 37-2.  Defendant placed up to five calls to Plaintiff in a single day, but allowed at least 90 minutes to elapse between each call.  *See* Call Log.  Defendant maintains it never intentionally left voicemails for Plaintiff.  Keller Decl. ¶ 8.  However, its dialing software uses a voice recognition algorithm to distinguish live people from answering machines, and in the event that the algorithm mistakes an answering machine for a live person, a brief message may be left unintentionally.  *Id.* ¶¶ 8, 9.

For the first 119 calls, Defendant contends Plaintiff did not answer.  *See* Call Log. However, Plaintiff maintains she would answer calls, but a live agent would not respond and she would eventually hang up.  Schwartz-Earp Decl. ¶ 8.  It is undisputed that Plaintiff answered a call placed on February 13, 2015 at approximately 4:16 p.m.  *See* Call Log.  During the February 13, 2015 call, Plaintiff asked the agent: "And who do I talk to about . . . being called six times a day?" Lambie Decl., Ex. 2 (Tr. of 2/13/2015 call), Dkt. No. 33-2.  Defendant contends the remaining 14 calls it placed to Plaintiff were not answered, while Plaintiff contends she would answer calls but a live agent would not respond.  *See* Call Log; Schwartz-Earp Decl. ¶ 8.  The last call from Defendant to Plaintiff was placed on February 22, 2015.  *See* Call Log.

On February 22, 2015 at approximately 1:06 p.m., Plaintiff called Defendant and agreed to a payment plan to bring her credit card account current.  Lambie Decl., Ex. 3 (Tr. of 2/22/2015 call), Dkt. No. 33-3.  On February 23, 2015 at approximately 2:28 p.m., Plaintiff called Defendant and asked to modify the payment plan she had previously agreed to.  *Id.*, Ex. 4 (Tr. of 2/23/2015 call), Dkt. No. 33-4.  On February 25, 2015 at approximately 12:25 p.m., Plaintiff called

United States District Court
Northern District of California

2

1   Defendant and asked to cancel the payment plan.  *Id.*, Ex. 5 (Tr. of 2/25/2015 call), Dkt. No. 33-5.

2   During the February 25, 2015 call, Plaintiff asked for Defendant to stop calling her, and

3   Defendant's collections agent stated that the calls would cease.  *Id.*

4           Plaintiff filed the present Complaint on April 7, 2015, alleging four causes of action

5   against Defendant: (1) violation of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C.

6   §§ 1692 *et seq.*; (2) violation of California's Rosenthal Fair Debt Collection Practices Act

7   ("Rosenthal Act"), Cal. Civ. Code §§ 1788-1788.32; (3) violation of the Telephone Consumer

8   Protection Act ("TCPA"); and (4) invasion of privacy.  Dkt. No. 4.  Defendant now moves for

9   summary judgment on all claims.

10                                        **LEGAL STANDARD**

11          Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

12  that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

13  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

14  bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

15  demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

16  317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v.*

17  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

18  sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

19          Where the moving party will have the burden of proof on an issue at trial, it must

20  affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

21  party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

22  the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

23  pointing out to the district court that there is an absence of evidence to support the nonmoving

24  party's case.  *Celotex*, 477 U.S. at 324-25.

25          If the moving party meets its initial burden, the opposing party must then set forth specific

26  facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ.

27  P. 56(e); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most

28  favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.

United States District Court
Northern District of California

3

2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

**DISCUSSION**

**A.     FDCPA**

In her First Claim for Relief, Plaintiff alleges Defendant's calls violated §§ 1692d, 1692d(5), and 1692f of the FDCPA.  Compl. ¶ 21.

1.     15 U.S.C. §§ 1692d, 1692d(5)

"In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers."  *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004).  An aggrieved party may thus recover actual damages, statutory damages and seek an award of attorney's fees and costs where the provisions of the FDCPA have been violated.  15 U.S.C. § 1692k(a).

Section 1692d prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt."  15 U.S.C. § 1692d.  The statute includes a non-exhaustive list of conduct that constitutes harassment, oppression or abuse, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5).

Plaintiff alleges Defendant violated 15 U.S.C. § 1692d "by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the alleged debt;" and violated 15 U.S.C. § 1692d(5) "by causing the phone to ring or engaging a

person in telephone conversations repeatedly with the intent to harass, oppress, and abuse the Plaintiff in connection with the collection of the Debt."  Compl. ¶ 21.

Defendant argues no reasonable juror could conclude that it intended to harass Plaintiff because it called her no more than five times a day, always waited at least 90 minutes between calls, made all calls between 8:00 a.m. and 6:30 p.m. in Plaintiff's local time zone, never intentionally left voicemails, and Defendant's collections agents clearly identified themselves at the outset of the call anytime they spoke with Plaintiff.  Mot. at 6.  Although it is undisputed that Defendant called at least 134 times, it argues the vast majority of the calls occurred before any actual contact had been made with Plaintiff.  *Id.*  Finally, Defendant notes it discontinued all efforts to contact Plaintiff after she asked for the calls to stop.  *Id.*

The Ninth Circuit Court of Appeals has not addressed the required proof of intent to annoy, abuse, or harass under § 1692d(5).  District courts in this circuit, however, have generally agreed that intent may be inferred from circumstantial evidence such as the nature, pattern, and frequency of debt collection calls.  *See Jones v. Rash Curtis & Assoc.*, 2011 WL 2050195 at *4-5 (N.D. Cal. Jan. 3, 2011) (collecting cases); *Joseph v. J.J. MacIntyre Cos., LLC*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002) ("Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.").  "However, no bright-line rule exists for the amount and pattern of calls necessary to raise a triable issue of harassment, and courts disagree on the issue."  *Neu*, 2013 WL 1773822, at *4 (citing *Krapf v. Nationwide Credit Inc.*, 2010 WL 2025323 at *3-4 (C.D. Cal. May 21, 2010) (collecting cases and illustrating the disagreement across districts)).

In situations with similar call volume and pattern as in this case, several courts found triable issues of intent to harass.  *See id.* at *5 (finding summary judgment inappropriate where the debt collector placed 150 telephone calls within a 51 day period); *Stirling*, 2012 WL 952310 at *5 (denying summary judgment where the debt collector called up to six times a day for almost four months); *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 810 (N.D. Ill. 2010) (finding summary judgment inappropriate where a debt collector called 31 times in a 12-day period, approximately two to three times per day); *Akalwadi v. Risk Mgmt. Alt's, Inc.*, 336 F. Supp. 2d 492, 506 (D. Md.

1    2004) (denying summary judgment for a debt collector called 26-28 times in just over one month).

2         Defendant contends this evidence is insufficient to raise a triable issue of fact on Plaintiff's

3    § 1692d claims because a high number of calls alone is insufficient to show harassment.  The

4    Court concurs that "the volume of calls itself is not determinative of whether the collector

5    intended to harass or abuse the called party."  *Johnson v. Portfolio Recovery Assocs., LLC*, 2013

6    WL 10156241, at *9 (C.D. Cal. June 24, 2013) (citation omitted).  In support of its argument,

7    Defendant cites *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218 (E.D. Cal. 2010).  Mot.

8    at 5.  In that case, the court found the plaintiff failed to raise a triable issue of fact, despite "daily"

9    or "real close to daily" calls from the collector.  *Arteaga*, 733 F. Supp. 2d at 1223, 1229.

10   However, as the *Artega* court noted, "[c]alling a debtor numerous times in the same day, or

11   multiple times in a short period of time, can constitute harassment under the FDCPA."  *Id.* at 1228

12   (citing *Akalwadi*, 336 F. Supp. 2d at 506 (telephone calls made on a daily basis and three phone

13   calls made within five hours raises question of fact for jury); *Kuhn v. Account Control Tech., Inc.*,

14   865 F. Supp. 1443, 1453 (D. Nev. 1994) (six telephone calls in 24 minutes constituted harassment

15   in violation of section 1692d(5)); *United States v. Cent. Adjustment Bureau, Inc.*, 667 F. Supp.

16   370, 376 (N.D. Tex. 1986), *aff'd*, 823 F.2d 880 (5th Cir. 1987) (finding harassment where debt

17   collector made as many as four or five telephone calls to the same debtor in one day)).  In contrast

18   to the "daily" or "real close to daily" calls in *Artega*, the evidence in this case includes that

19   Defendant called Plaintiff multiple times a day, with as many as five calls in a day.  Thus, the

20   volume and pattern of calls alone is sufficient to raise a genuine dispute of material fact.  *See*

21   *Bennett v. Portfolio Recovery Assocs., LLC*, 2013 WL 6320851, at *3 (C.D. Cal. Nov. 22, 2013)

22   (denying summary judgment where collector called plaintiff's number twice in one day on twenty

23   occasions and three times in one day on eight occasions).

24        Finally, Defendant cites two out of district cases in which courts found that even multiple

25   calls in a single day did not constitute a violation of § 1692d(5).  Mot. at 5 (citing *Tucker v. CBE*

26   *Grp., Inc.*, 710 F. Supp. 2d 1301, 1305-06 (M.D. Fla. 2010); *Carman v. CBE Grp., Inc.*, 782 F.

27   Supp. 2d 1223, 1230-32 (D. Kan. 2011)).  The Court is not persuaded by these opinions.  As noted

28   above, the Ninth Circuit Court of Appeals has not addressed the required proof of intent under §

United States District Court
Northern District of California

1692d(5), and courts within this circuit have found summary judgment inappropriate where there are multiple calls in a single day. *See Neu*, 2013 WL 1773822, at *5; *Stirling*, 2012 WL 952310 at *5; *Krapf*, 2010 WL 2025323, at *4. While courts may take different views as to the amount and pattern of calls sufficient to raise a triable issue of fact of intent, when viewed in the light most favorable to Plaintiff, the Court finds there is evidence on the record raising a triable issue of fact in this case. Accordingly, Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's § 1692d claim.

2.   15 U.S.C. § 1692f

Plaintiff also brings a claim for violation of § 1692f of the FDCPA. Compl. ¶ 21(c). Section 1692f prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. It furnishes eight nonexhaustive examples of conduct that constitutes unfair or unconscionable means:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit. (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution. (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument. (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees. (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if-(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement. (7) Communicating with a consumer regarding a debt by post card. (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f.

There is no evidence of conduct by Defendant that is remotely similar to the examples provided. *See Fox*, 15 F.3d at 1519 (finding no violation of § 1692f when "no evidence ha[d] been offered of any conduct by the defendants in the least comparable with the conduct condemned [by § 1692f]"); *Johnson*, 2013 WL 10156241, at *11 (same). As discussed above, Plaintiff bases her claims only on the number of calls. However, § 1692f provides no indication that this particular provision was meant to create a cause of action based on such a claim. Indeed, that the FDCPA provides specific provisions creating causes action for such actions and provides examples of violations of § 1692f that are in no way similar to the conduct proscribed in §§ 1692d suggests the opposite. Because Plaintiff has presented no evidence of actions that are similar to those proscribed by § 1692f, Defendant's Motion for Summary Judgment is GRANTED as to this cause of action.

**B.      Rosenthal Act**

Defendant also moves for summary judgment on Plaintiff's Rosenthal Act claim. Mot. at 8. However, it provides no support for its position, arguing only that "[l]iability under the Rosenthal Act is derivative of liability under the FDCPA," and "[a] defendant entitled to summary judgment on FDCPA claims is likewise entitled to summary judgment on concurrent claims under the Rosenthal Act." *Id.*

Like the FDCPA, the purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). It is California's counterpart to the Federal FDCPA and incorporates its salient provisions. *Id.* § 1788.17.

Plaintiff alleges Defendant violated § 1788.11(d) of the Rosenthal Act "by causing a telephone to ring repeatedly or continuously to annoy the person called;" and § 1788.11(e) "by communicating with the Plaintiff with such frequency as to be unreasonable and to constitute a harassment to the Plaintiff under the circumstances." Compl. ¶ 24. Although Defendant argues it is entitled to summary judgment based on its FDCPA arguments, the Court has denied Defendant's Motion with respect to one of Plaintiff's FDCPA claims, and therefore Court

8

1   DENIES Defendant's Motion with respect to Plaintiff's Rosenthal Act claims.

2   **C.     TCPA**

3          Plaintiff next alleges Defendant violated the TCPA by placing calls to her using an

4   automatic telephone dialing system.  Compl. ¶ 30(a).  Defendant argues it is entitled to summary

5   judgment on this claim because Plaintiff provided her telephone number at the time she applied for

6   the credit card that gave rise to the underlying debt, and she therefore consented to being contacted

7   at that number by Synchrony and collections companies acting on its behalf.  Mot. at 9.

8          Congress passed the TCPA to protect individual consumers from receiving intrusive and

9   unwanted calls.  *See Mims v. Arrow Fin. Servs., LLC*, __ U.S. __, 132 S. Ct. 740, 745 (2012).

10  "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number;

11  (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."

12  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C.

13  § 227(b)(1)).  Accordingly, a claim that Plaintiff consented to receive calls is an affirmative

14  defense to liability under the TCPA.  *See Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1102 (C.D.

15  Cal. 2014), *aff'd*, 2016 WL 424778 (9th Cir. Feb. 3, 2016).  At trial, Defendant would bear the

16  burden of proof on such an affirmative defense.  *Id.*  Therefore, to obtain summary judgment,

17  Defendant "must come forward with evidence which would entitle it to a directed verdict if the

18  evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests.*, 213 F.3d

19  474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted).  "Prior express consent is

20  a complete defense to Plaintiff['s] TCPA claim."  *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d

21  1090, 1097 (N.D. Cal. 2015) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d

22  1069, 1073 (S.D. Cal. 2014)).

23         It is undisputed that Plaintiff provided her cellphone number as part of the credit card

24  application process—the cashier asked Plaintiff for her telephone number and Plaintiff provided

25  her number.  Pl. Dep. 36:24-37:25.  Still, the TCPA does not define what constitutes "prior

26  express consent."  47 U.S.C. § 227(b)(1)(A)(iii).

27         Congress authorized the Federal Communications Commission ("FCC") to implement

28  rules and regulations enforcing the TCPA.  *Id.* § 227(b)(2).  In a 1992 ruling, the FCC ruled that

"persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992) ("1992 FCC Order") (citing H.R. Rep. No. 102–317, at 13 (1991) ("[T]he called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications.")).  That definition must govern this Court's analysis of whether Plaintiff can prevail on her TCPA claim.  *See* 28 U.S.C. § 2342(1); *U.S. W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1053-55 (9th Cir. 2000) (deferring to FCC's interpretation of Telecommunications Act of 1996 despite "serious doubts about the FCC's analysis").

Under the FCC's definition, it is undisputed that Plaintiff "knowingly release[d]" her cellphone number as part of the credit card application process, *see* Pl. Dep. 36:24-37:25, and by doing so gave permission to be called at that number by an automated dialing machine.  *See* 1992 FCC Order ¶¶ 7, 31.  "In accordance with the 1992 FCC Order, the vast majority of cases to address the issue have held that a customer who provides her telephone number to another party consents to receive calls or texts from that party."  *Reardon*, 115 F. Supp. 3d at 1097 (collecting cases).[1]

Further, although Plaintiff applied for a JCPenney-branded credit card, there is no genuine factual dispute over the fact that JCPenney contracted with Synchrony to issue the card.  No reasonable consumer could believe that consenting to be contacted for a store credit card requires that all communications be made by direct employees of the store, but never by the company that issued the card.  "When a consumer provides a cellular telephone number to a creditor as part of the underlying transaction, the provision of the number constitutes express consent for the creditor to contact the consumer about the debt."  *Chyba v. First Fin. Asset Mgmt., Inc.*, 2014 WL 1744136, at *10 (S.D. Cal. Apr. 30, 2014), *appeal dismissed* (Jan. 16, 2014) (citing *In the Matter*

---

[1] Although some of the collected cases address this issue in the context of text messages, such messages are considered calls within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

United States District Court
Northern District of California

*of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564-65 (2008) ("2008 FCC Order")). Thus, "[c]alls placed by a third-party debt collector on behalf of the creditor are treated as if the creditor itself placed the call." *Id.* (citing 2008 FCC Order at 565). Further, "[a]n individual may indirectly provide a third party with express consent to be called under TCPA." *Olney v. Job.com, Inc.*, 2014 WL 1747674, at *7 (E.D. Cal. May 1, 2014). For example, in *Baird*, the plaintiff purchased an airline ticket and, in doing so, provided the airline company with her cellphone number. 2014 WL 320205, at * 1. The defendant, a third party, contracted with the airline to provide flight notification services to passengers. *Id.* After the defendant sent her a text message inquiring whether she would like to receive flight notification updates via text message, the plaintiff brought suit on the ground that the text message violated TCPA as it was sent without her prior express consent. *Id.* The court disagreed, finding that, under the 1992 FCC Order, the plaintiff had "consented to be contacted on her cell phone about flight-related matters." *Id.* at *6. Thus, the court found that although the defendant was a third party, its text message to the plaintiff "fell within the scope of her 'prior express consent.'" *Id.*; *see also Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1078 (S.D. Cal. 2014) (finding summary judgment appropriate where plaintiff provided cellphone number as part of gym membership application and was later contacted by a third party marketing company on behalf of the gym, even though plaintiff "simply provided his phone number on an application card with no discussion of why [it was] needed or what [the gym] would do with it.").

Plaintiff's act of providing her cellphone number was a voluntary act; she was not forced to obtain the credit card. Thus, under the FCC's interpretation of the TCPA, she consented to be contacted on her cellphone about matters related to her credit card, including by third party debt collectors. As such, when Synchrony engaged Defendant in the collection of Plaintiff's debt, its calls fell within the scope of her "prior express consent." Defendant is therefore entitled to summary judgment, and the Court GRANTS Defendant's Motion as to Plaintiff's TCPA claim.

**D.      Invasion of Privacy**

Finally, Plaintiff alleges Defendant invaded her privacy "by repeatedly and unlawfully attempting to collect the debt." Compl. ¶ 34. Defendant argues summary judgment is appropriate

United States District Court
Northern District of California

because it had a qualified privilege to engage in the conduct at issue because Plaintiff consented to being contacted by telephone, the account balance Defendant sought to collect was unpaid and remained outstanding, and its calls did not continue after Plaintiff expressly asked for them to stop. Mot. at 10.

An action for invasion of privacy by intrusion upon seclusion has two elements: (1) an intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person. *Smith v. Capital One Fin. Corp.*, 2012 WL 1669347, at *3 (N.D. Cal. May 11, 2012) (citing *Taus v. Loftus*, 40 Cal. 4th 683, 725 (2007)); *see also Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."). The intrusion must be intentional. *Capital One*, 2012 WL 1669347, at *3. "In addition, the plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.* (citing *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 232 (1998)). Determining the offensiveness of a given intrusion requires consideration of all the circumstances of the intrusion, including its degree and setting and the intruder's "motives and objectives." *Shulman*, 18 Cal. 4th at 236 (citing *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483-84 (1986)).

It is undisputed that Defendant called Plaintiff at least 134 times. "[R]epeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion." *Inzerillo v. Green Tree Servicing, LLC*, 2014 WL 6660534, at *4 (N.D. Cal. Nov. 24, 2014) (collecting cases). However, "'[i]n the area of collection practices, a creditor has a qualified privilege to protect its economic interest.'" *Id.* (quoting *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1468 (1990)); *see also Bundren v. Superior Ct.*, 145 Cal. App. 3d 784, 789 (1983) ("When one accepts credit, the debtor impliedly consents for the creditor to take reasonable steps to pursue payment even though it may result in actual, though not actionable, invasion of privacy. . . . In the debtor-creditor situation the right of a debtor to privacy is subject to the right of a creditor to take reasonable steps to collect the debt."). "The privilege 'may be lost if the

1    creditor uses outrageous and unreasonable means in seeking payment,' but 'it is not enough that

2    the creditor's behavior is rude or insolent.'"  *Inzerillo*, 2014 WL 6660534, at *4 (quoting

3    *Symonds*, 225 Cal. App. 3d at 1469).  "The 'applicable test is whether or not the creditor goes

4    beyond all reasonable bounds of decency in attempting to collect the debt.'"  *Id.* (quoting *Bundren*,

5    145 Cal. App. 3d at 789).

6           No reasonable juror could conclude that Defendant's conduct exceeded all reasonable

7    bounds of decency.  As previously discussed, Plaintiff consented to being contacted by telephone

8    when she provided her number while applying for the JCPenney-branded credit card that gave rise

9    to the underlying debt.  Pl. Dep. 36:24-37:25.  Plaintiff concedes the account balance was unpaid

10   and remained outstanding.  *Id.* 59:11-17, 70:23-71:6.  She has shown little more than that

11   Defendant attempted to call her, albeit on numerous occasions, to collect on this debt.  An

12   allegation regarding call volume "without more is not enough to state a claim for invasion of

13   privacy above a speculative level."  *Inzerillo*, 2014 WL 6660534, at *5 (quoting *Castellanos v.

14   JPMorgan Chase & Co.*, 2009 WL 1833981, at *10 (S.D. Cal. June 23, 2009)).  Further,

15   Defendant no longer called after Plaintiff explicitly asked for it to stop calling.  These undisputed

16   facts establish that Defendant did not invade Plaintiff's affairs in a manner highly offensive to a

17   reasonable person.  *Cf. Inzerillo*, 2014 WL 6660534, at *5 (finding summary judgment

18   inappropriate where, in addition to calling the plaintiff 98 times, the defendant threatened to

19   change the locks on the house, send someone to the property to disturb the plaintiff's tenant, and

20   personally see to it that any short sale would be denied and the property foreclosed upon).

21          Plaintiff argues the determination of whether something is highly offensive to a reasonable

22   person can only be made by a jury.  Opp'n at 10 (citing *Deteresa*, 121 F.3d at 465).  However, as

23   recognized by the Ninth Circuit in *Deteresa*, "[w]hile what is 'highly offensive to a reasonable

24   person' suggests a standard upon which a jury would properly be instructed, there is a preliminary

25   determination of 'offensiveness' which must be made by the court in discerning the existence of a

26   cause of action for intrusion."  121 F.3d at 465 (citation and some internal quotations omitted).  "If

27   the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact

28   on privacy interests, the question of invasion may be adjudicated as a matter of law."  *Id.* (citation

United States District Court
Northern District of California

13

1   and internal quotations omitted).  Here, Defendant made all calls during a reasonable time of day,

2   never intentionally left voicemails, Defendant's collections agents clearly identified themselves at

3   the outset of the call anytime they spoke with Plaintiff, and Defendant discontinued all efforts to

4   contact Plaintiff after explicitly asked for the calls to stop.  Thus, as Plaintiff fails to set forth facts

5   establishing offensive conduct necessary to establish an invasion of privacy claim, summary

6   judgment is appropriate.

7        Based on this analysis, Defendant's motion is GRANTED as to Plaintiff's invasion of

8   privacy claim.

9                                    **CONCLUSION**

10       Based on the analysis above, the Court hereby **DENIES** Defendant's Motion for Summary

11  Judgment as to Plaintiff's § 1692d FDCPA and Rosenthal Act claims.  The Court **GRANTS**

12  Defendant's Motion as to Plaintiff's § 1692f FDCPA, TCPA, and invasion of privacy claims.

13       **IT IS SO ORDERED.**

14

15  Dated: March 9, 2016

16  _____

17  MARIA-ELENA JAMES
    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California